Jessica R. America SBN 32137
**CLARKE LAW OFFICES**
3001 East Camelback Road, Suite 145
Phoenix, Arizona 85016
(602) 952-3232
Jessica.w@clarkelaw-az.com
minuteentries@clarkelawoffices.com

Attorney for Anita Harris

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: | Chapter 13 |
| PERRY RICHARD HARRIS, JR. | Case No.: 2:15-bk-15410-PS |
| Debtor. | |
| | **OBJECTION TO CONFIRMATION OF PLAN** |
| ANITA HARRIS | |
| Non-Party with Interest. | |

Anita Harris, through undersigned counsel, respectfully submits the following objection to the confirmation of Debtor's proposed Chapter 13 Bankruptcy Plan. Mrs. Harris is the wife and co-debtor of most of the debt included in the Debtor's Plan. Mrs. Harris shares an equal interest and financial responsibility in the community debt Debtor has listed in his Chapter 13 Bankruptcy Petition and respectfully submits this objection based upon the following reasons:

1. Debtor's Petition erroneously states that Debtor is the only party with interest in the single family home, address: 2850 W. Windsong Drive Phoenix, AZ 85045 (Schedule A/B: Property 1.1). Anita Harris is listed on the Deed to the property. (Copy of Deed attached)

2. Debtor's Petition erroneously states that Debtor is the only party with interest in the single family home, address: 404 Ridgetop Drive Acworth GA 30102 (Schedule A/B: Property 1.2). Anita Harris is a co-debtor on the Mortgage for the property. (Copy of Ocwen Loan Servicing, LLC Mortgage Account Statement).

3. Debtor's Petition erroneously states that Debtor is the only party with interest in the Nissan Frontier (Schedule A/B: Property 3.1). The Nissan Frontier is property of the marital community, and as such Mrs. Harris has a 50% interest in the vehicle.

4. Anita Harris is a co-debtor of various other debts listed in the Debtor's Petition. The Debtor erroneously states that he is the only debtor who is liable for the following Secured and Unsecured Claims and does not indicate that these debts are in fact community debts shared by both Debtor and Mrs. Harris:

    a.    Diamond Resorts Fs- Time Share Loan (Schedule D: 2.1, cr13864786)

    b.    Diamond Resorts Fs- Time Share Loan (Schedule D: 2.2, cr13864786)

    c.    Loan Care Servicing- Single Family Home (Schedule D: 2.3, cr13864793)

    d.    Ocwen Loan Servicing- Single Family Home (Schedule D: 2.1, cr13864797)

    e.    Worldmark- Time Share Loan (Schedule D: 2.1, cr13864804)

    f.    Wyndham Vacations- Time Share Loan (Schedule D: 2.1, cr13864805)

5. Debtor does not list Mrs. Harris as a co-debtor on Schedule H (Form 106H).

6. Debtor's Petition provides erroneous information regarding the Debtor's Financial Affairs (Official Form 107) as follows:

   a. (Part 3) Though debtor did not pay any creditor in the 90 days prior to the filing of the bankruptcy, Mrs. Harris did, on behalf of the marital community and it was in an amount greater than $600.00. Debtor did not list these payments.

   b. (Part 4) Debtor states that he is not a party to a lawsuit, when in fact he filed a Petition for Dissolution on June 4, 2015 in the Maricopa County Superior Court.

7. Debtor's Petition provides erroneous information regarding the Debtor's calculation of disposable Income (Official Form 122C-1) as follows:

   a. Item 19: Court-Ordered Payments. Debtor does not list the Temporary Court Order to Enforce Spousal Maintenance, Property and/or Debt, and Attorney's Fees, filed on December 03, 2015. The Court Order requires that Debtor pay Anita Harris a total of $2,150.00 per month for Community Debts, Property and Spousal Maintenance. In addition, Debtor is ordered to pay $2,000.00 to Claimant Anita Harris by February 1, 2016 (Copy of Orders attached).

8. Debtor failed to list Mrs. Harris as a creditor. Debtor paid $3000.00 in legal fees out of the joint marital account without the knowledge or consent of Mrs. Harris. This is a debt that remains due and owed to Mrs. Harris (Copy of check attached).

9. Debtor has not made a single payment on any of his obligations since the filing of this Chapter 13 Plan and Application for Payment. Per his Plan, Debtor is to pay post-petition payments direct to the creditor and prepetition arrearages shall be

cured through the Trustee. No payments have been made, most importantly, on the house Mrs. Harris currently resides which is jointly owned (Loancare Servicing Ctr., Property Address: 2850 W. Windsong Drive, Phoenix AZ 85045)

WHEREFORE, Anita Harris, through counsel undersigned respectfully requests this honorable court to deny confirmation and dismiss this case, or in the alternative direct the Debtor to amend the Plan to conform to this objection.

RESPECTFULLY Submitted this 7th day of March, 2016.

By  /s/ Jessica R. America
Jessica R. America, Esq.
**CLARKE LAW OFFICES**
3001 East Camelback Road, Suite 145
Phoenix, Arizona 85016
(602) 952-3232

CERTIFICATE OF SERVICE:

I hereby certify that a copy of the foregoing OBJECTION was served on March 7, 2016. Service was accomplished by the following indicated:

BY ELECTRONIC NOTICE OR FIRST CLASS MAIL
**DEBTOR**
(Via First Class Mail)
Perry Richard Harris, Jr.
2820 E. Palm Dale lane
Gilbert, AZ 85298

**DEBTOR'S ATTORNEY**

(Via Email)
Adam E. Hauf
HAUF LAW, PLC
3700 N. 24th St., #120
Phoenix, AZ 85016
adam@hauflaw.com

**TRUSTEE**
(Via Email)
Russell Brown
Chapter 13 Trustee, Suite 800
2828 N. Central Ave.
Phoenix, AZ 85012-1965
mail@ch13bk.com

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on March 1, 2016, in Phoenix, Arizona.

By: /s/ Jessica America _____

# EXHIBITS

Return To:
Freedom Mortgage Corporation
Attn: Final Documents
P.O. Box 8001
Fishers, IN 46038-8001


Prepared By:


—————————————— [Space Above This Line For Recording Data] ——————————————

# DEED OF TRUST

MIN 1000730-0086749942-8

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated April 17, 2013
together with all Riders to this document.
(B) "Borrower" is Perry Harris and Anita Smith-Harris, husband and wife, as community property


Borrower is the trustor under this Security Instrument. Borrower's mailing address is 2850 E WINDSONG DR, PHOENIX, AZ 85048-0000
(C) "Lender" is Freedom Home Mortgage Corporation (FN)

Lender is a Corporation
organized and existing under the laws of The State of New Jersey

99680162                                                           0086749942

ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3003 1/01 (rev. 6/02)

-6A(AZ) (0810)
Page 1 of 15                    Initials
        VMP Mortgage Solutions, Inc.

Lender's mailing address is 907 Pleasant Valley Av Ste 3, Mount Laurel, NJ 08054

(D) "Trustee" is National Title Insurance of New York, Inc.

. Trustee's mailing address is

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated April 17, 2013

The Note states that Borrower owes Lender Two Hundred Seven Thousand Six Hundred Forty Seven and 00/100                                                     Dollars (U.S. $207,647.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2043

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☒ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                                                                 of Maricopa                                                    :

        [Type of Recording Jurisdiction]                                        [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID Number: 30170204 1                        ·            which currently has the address of
2850 E Windsong Dr                                                                                    [Street]
Phoenix                                                                  [City], Arizona 85048             [Zip Code]
("Property Address"):

       TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

       BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

       THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

99680162                                                                                      0086749942
ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(AZ) (0810)                         Page 3 of 15          Initials:            Form 3003  1/01 (rev. 6/02)

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on,.the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid. Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check,˙ bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

99680162                                                                                    0086749942
ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
(VMP) -6A(AZ) (0810)                          Page 4 of 15        Initials:            Form 3003   1/01  (rev. 6/02)

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

99680152                                                                                           0086749942
ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP® -6A(AZ) (0810)                              Page 5 of 15        Initials:              Form 3003    1/01  (rev. 6/02)

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

99680162
ARIZONA -Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
-8A(AZ) (0810)                    Page 6 of 15            Initials            Form 3003  1/01 (rev. 6/02)

0086749942

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

99680162
ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
-6A(AZ) (0810)                    Page 7 of 15        Initials                Form 3003   1/01  (rev. 6/02)

0086749942

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

99680162
ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
0086749942

VMP® -6A(AZ) (0810)    Page 9 of 15    Initials: _____    Form 3003  1/01  (rev. 6/02)

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

99680162                                                                                    0086749942
ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
-6A(AZ) (0810)                                        Page 12 of 15        Initials:              Form 3003 1/01 (rev. 6/02)

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Time of Essence. Time is of the essence in each covenant of this Security Instrument.

99680162                                                                    0086749942
ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP -6A(AZ) (0810)                          Page 13 of 15        Initials            Form 3003   1/01  (rev. 6/02)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                   Perry Harris            -Borrower

_____          _____ (Seal)
                                   Anita Smith-Harris       -Borrower

_____ (Seal)  _____ (Seal)
               -Borrower                            -Borrower

_____ (Seal)  _____ (Seal)
               -Borrower                            -Borrower

_____ (Seal)  _____ (Seal)
               -Borrower                            -Borrower

99680162                                           0086749942
ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP -6A(AZ) (0610)                Page 14 of 15         Form 3003  1/01  (rev. 6/02)

STATE OF ARIZONA, *MARICOPA*                                    County ss:

    The foregoing instrument was acknowledged before me this    *4-17-2013*
by Perry Harris
Anita Smith-Harris


My Commission Expires: *2-24-16*

MICHAEL J BEDFORD
Notary Public - Arizona
Maricopa County
My Commission Expires
February 24, 2016

Notary Public

99680162                                                                                        0086749942
ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
-6A(AZ) (0810)                                    Page 15 of 15    Initials:              Form 3003   1/01  (rev. 6/02)

Order No.: **16080162**
Loan No.: 0086749942

## Exhibit A

The following described property:

Lot 95, Cays Pavillion, according to the plat of record in the Office of the County Recorder of Maricopa County, Arizona, recorded in Book 310 of Maps, Page 43.

Assessor's Parcel No:     30170204 1



**O C W E N**

Ocwen Loan Servicing, LLC
PO Box 24738
West Palm Beach, FL 33416-4738

www.ocwencustomers.com

| | Mortgage Account Statement |
|---|---|

| Property Address | 404 Ridge Top Dr |
|---|---|
| | Acworth, GA 30102 |

| Statement Date | 11/16/15 |
|---|---|
| Account Number | 7110343113 |
| Payment Due Date | 12/01/15 |
| **Amount Due** | **$4,603.32** |
| If payment is received after 12/16/15, a $47.77 late fee will be charged. | |

| Customer Care | 800-746-2936 |
|---|---|
| Insurance | 866-317-7661 |

11/6/15 1:50 PM 3 00279731 20151117 I00/R99 OCWSTMT 1 az DO# I00/R99/0000\* 168931 M/B

PERRY R HARRIS
ANITA E HARRIS
2820 EAST PALMDALE LANE
GILBERT AZ 85298-5706



| Principal Balance* | $140,377.36 |
|---|---|
| Escrow Balance | -$315.70 |
| Maturity Date | November 1, 2035 |
| Interest Rate | 5.44806% |
| Prepayment Penalty | No |

| Principal | $322.45 |
|---|---|
| Interest | $632.97 |
| Escrow | $172.08 |
| **Total Regular Payment** | **$1,127.50** |
| Past Due Payment(s) Amount | $3,511.07 |
| Fees/Other Charges | $13.25 |
| Unapplied Funds** | -$48.50 |
| **Total Amount Due** | **$4,603.32** |

*This is the Principal Balance only, not the amount required to pay the loan in full.

### How Payments & Charges were Applied

| Date Applied | Date Received | Description | Transaction Total | Principal | Interest | Escrow | Optional Products | Late Charges | Fees/Other | Unapplied Funds |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/19/15 | | Late Charge Assessed | -$47.77 | | | | | -$47.77 | | |
| 10/26/15 | | Charge - Property Inspection Fee | -$13.25 | | | | | | -$13.25 | |

### Past Payments Breakdown

| | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $.00 | $1,804.47 |
| Interest | $.00 | $3,892.91 |
| Escrow (Taxes & Insurance) | $.00 | $1,001.24 |
| Fees/Other Charges | $.00 | $95.54 |
| Unapplied Funds** | $.00 | $48.50 |
| Total | $.00 | $6,942.66 |

### Special Notice

### Important News

**Unapplied Funds. Any partial payments that you make are not applied to your mortgage, but instead are held in a separate unapplied funds account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

Payments received will be applied in accordance with the mortgage note. Payments will be first applied to bring the loan contractually current. Any additional funds received will be applied to outstanding fees and advances prior to being applied to principal.

Tax season is right around the corner. Please visit OCWEN's website at www.ocwencustomers.com to verify the social security number on file for your loan.

If you have any questions about your loan, please call 1-800-746-2936 and ask to set up an appointment with Hernando Sanabris, your relationship manager, or schedule an appointment at www.ocwencustomers.com.

**See reverse side for important information and state specific disclosures.**



**O C W E N**

### Payment Coupon

Perry R Harris
Account Number: 7110343113

| **AMOUNT DUE** | $4,603.32 |
|---|---|
| If received after 12/16/15 add Late Charge of | $47.77 |
| Total Amount Due with Late Charge | $4,651.09 |
| Additional Principal | |
| Additional Escrow | |
| Late Charges and Fees | |
| Other Additional Payments | |
| **Total Enclosed** | |

Note: If the loan is current, any excess funds will first be applied to outstanding amounts due and then additional principal.

If this payment is made via automatic drafting, this statement is for informational purposes only.

OCWEN LOAN SERVICING, LLC
PO BOX 6440
CAROL STREAM IL 60197-6440



1 00004651097 4444444AA1 00000711034311 50 004603320

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

FN 2015-003563                                            12/03/2015

                                              CLERK OF THE COURT
JUDGE PAMELA D. SVOBODA                            A. Cannon
                                                    Deputy

IN RE THE MATTER OF
PERRY HARRIS                          PERRY HARRIS
                                      108 N GREENFIELD RD # 1020
                                      MESA AZ  85205

AND

ANITA ELAINE SMITH HARRIS             ANITA ELAINE SMITH HARRIS
                                      2850 E WINDSONG DR
                                      PHOENIX AZ  85048
                                      RODNEY GALARZA


### TEMPORARY ORDER HEARING

Courtroom CCB - 702

Prior to the commencement of today's proceedings Respondent's exhibits 1 through 13 are marked for identification.

3:25 p.m.  This is the time set for Temporary Orders Hearing regarding Respondent's October 20, 2015 Motion for Temporary Orders for Spousal Maintenance, Property and/or Debt, and Attorney Fees.   Petitioner/Husband, Perry Harris, is present on his own behalf. Respondent/Wife, Anita Elaine Smith Harris, is present on her own behalf.

A record of the proceedings is made by audio and/or videotape in lieu of a court reporter.

Discussion is held regarding the status of the case.

**LET THE RECORD REFLECT** today's hearing was set for 3:00 p.m. and it is now 3:25 p.m. and Husband is not present, nor has he contacted this Division to state a reason for his

Docket Code 005                    Form D000A                              Page 1

absence. Husband having failed to demonstrate good cause for his failure to appear, the Court will convene and proceed by default in his absence.

**THE COURT FINDS** that this is a properly noticed proceeding. Husband received actual notice of today's hearing on November 4, 2015 in open court. There is no reasonable explanation for his failure to appear and the Court will proceed in Father's absence.

Anita Elaine Smith Harris is sworn.

Respondent's exhibits 14 through 16 are marked for identification.

Anita Elaine Smith Harris testifies.

**IT IS ORDERED** on a temporary basis, effective today's date that Husband shall be responsible for and pay ½ of the following monthly community debts:

- One half of the mortgage for the Georgia rental in the amount of $510 per month.
- One half of the mortgage for the Windsong Drive property in the amount of $625 per month.
- One half of the Las Vegas Timeshare (Worldmark by Wyndham) in the amount of $185 per month.
- One half of the Nissan Sentra that the parties' daughter is currently driving in the amount of $172 per month.
- One half of the USSA Visa credit card in the amount of $160 per month.
- One half of the IRS bill in the amount of $250 per month.

**IT IS FURTHER ORDERED** on a temporary basis, that Wife shall be awarded exclusive use of the 2010 Nissan Frontier. Husband shall provide the 2010 Nissan Frontier to Wife **by no later than one week from today's date.**

**IT IS FURTHER ORDERED** that Husband shall pay to Wife $2,000 as and for one half of the total cost of the Windsong Drive property mortgage, the Las Vegas Timeshare (Worldmark by Wyndham), and the Nissan Sentra that the parties' daughter is currently driving since May, 2015. Husband shall pay the $2,000 to Wife **within 60 days from today's date.**

**THE COURT FINDS** that in accordance with A.R.S. § 25-319, Wife is entitled to an award of spousal maintenance on a temporary basis because of a marriage of long duration and Wife's inability to be completely self-sufficient as Husband has stopped paying any of the community debt.

FN 2015-003563                                          12/03/2015


**THE COURT FINDS** on a temporary basis that Wife is entitled to an award of spousal maintenance in the amount of $250.00 per month.

**IT IS ORDERED** that effective as of December 1, 2015, on a temporary basis, Husband shall pay to Wife spousal maintenance in the amount $250.00 per month until further order of the Court.

**IT IS FURTHER ORDERED** affirming the Trial set for February 29, 2016 at 9:00 a.m. in this Division

4:12 p.m.  Matter concludes.

**IT IS FURTHER ORDERED** signing this Minute Entry as a formal written order of the Court pursuant to Rule 81, Arizona Rules of Family Law Procedure.


/s/ Pamela D. Svoboda

_____
THE HONORABLE PAMELA D. SVOBODA
JUDICIAL OFFICER OF THE SUPERIOR COURT

FILED: Exhibit Worksheet

All parties representing themselves must keep the Court updated with address changes. A form may be downloaded at: http://www.superiorcourt.maricopa.gov/SuperiorCourt/Self-ServiceCenter.

Perry Harris
Anita Harris
2850 E Windsong Dr
Phoenix, AZ 85048
(678)296-4569

30-7426/3140

6019

4/28 20 15

PAY
TO THE
ORDER OF _Rachel Frazier Johnson Law_ $ 3000 00

_Three Thousand Dollars Only_ DOLLARS

USAA Federal Savings Bank (FSB)
9800 Fredericksburg Road
San Antonio, TX 78288
CULTURE FOR SERVICE,
SERVICE FOR HUMANITY

FOR _Legal Fees_

⑆314074269⑆ ⑈175139997⑈ 6019